In the Matter of the Petition of DAVID WILKIE, Appellant, for an Alternative Mandamus Order against EMERSON O'CONNOR, Commissioner of Public Welfare for Seneca County, New York, Respondent.

Fourth Department, March 5, 1941.

*Ernest G. Gould*, for the appellant.

*J. Willard Huff*, for the respondent.

CROSBY, P. J. The appellant, by petition dated March 29, 1940, commenced this proceeding to obtain an alternative mandamus order to show cause why the commissioner of public welfare of Seneca county should not deliver to petitioner a check for $24.50, being the amount of " Old age assistance," under the Public Welfare Law, which petitioner had been receiving for some time.

The commissioner's answer alleges that petitioner, despite all efforts to dissuade him, insists upon his right to sleep under an old barn, in a nest of rags to which he has to crawl upon his hands and knees. The answer further alleges that petitioner has been offered suitable living quarters and an increase in pension sufficient to enable him to maintain a so-called civilized standard of living.

The record discloses that the justice in Special Term made a personal inspection of petitioner's sleeping quarters before denying the prayer of his petition.

The remedy of mandamus, by that name at least, was abolished September 1, 1937, by article 78 of the Civil Practice Act. However, no objection is made to the form of the petition or to the practice followed. We shall treat the matter, therefore, as a proceeding under article 78. Subdivision 4 of section 1285 of that article provides that the procedure under article 78 is not available to a party where the determination complained of " can be adequately reviewed by an appeal to a court or to some other body or officer."

An appeal from the determination of the commissioner of public welfare to the State Department of Public Welfare is specifically provided for in the Public Welfare Law (§ 124-d). Section 124-e provides that " All grants of assistance under this article shall be reconsidered from time to time," and " it shall be within the power of the public welfare official at any time to cancel and revoke assistance for cause, and he may for cause suspend payments thereof for such periods as he may deem proper, *subject to review by the State department*, as provided in section one hundred twenty-four-d."

Section 124-f provides that not only the public welfare officer, and the pensioner, but "any person" may apply to the State department for the correction of any errors committed by the local welfare officer.

Indeed appellant, in his brief, cites section 124-f and complains that the welfare officer did not appeal to the State department. The same appeal, at much less expense than the appeal to this court, was available to the appellant. It follows that he is improperly in court. (Civ. Prac. Act, § 1285, subd. 4.)

However, we are tempted to go further, in view of the public interest, as well as the human interest involved in this proceeding. One of appellant's arguments, gathered from his brief, is that after the local welfare officer has once granted the petitioner a pension he has no control over the matter, and that his only duty is to pay the pension regularly, and that his power is limited to the performance of that duty. The Public Welfare Law clearly negatives that argument. Appellant also argues that he has a right to live as he pleases while being supported by public charity. One would admire his independence if he were not so dependent, but he has no right to defy the standards and conventions of civilized society while being supported at public expense. This is true even though some of those conventions may be somewhat artificial. One is impressed with appellant's argument that he enjoys the life he lives in his humble "home" as he calls it. It may possibly be true, as he says, that his health is not threatened by the way he lives. After all he should not demand that the public, at its expense, allow him to experiment with a manner of living which is likely to endanger his health so that he will become a still greater expense to the public.

It is true, as appellant argues, that the hardy pioneers of our country slept in beds not better than the one he has chosen. But, unlike the appellant, they did it from necessity, and unlike the appellant, they did not call upon the public to support them, while doing it.

Another of appellant's arguments is entirely fallacious. In his brief he says that to a man who has "lived a good life for sixty-five years * * * this old age assistance statute should be viewed in the light of a *reward.*" There is nothing in the record to show that appellant has lived a "good life." In any case his old age pension is not given as a reward, it is given to satisfy a human need regardless of the kind of life the man has lived, and, in accepting charity, the appellant has consented to the provisions of the law under which charity is bestowed. There is nothing in the record to show that the welfare law has, in this case, been improperly administered.

The order appealed from should be affirmed, without costs.

All concur. Present — CROSBY, P. J., TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Order affirmed, without costs.